UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DERRICK DUANE BARKER,** | )<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | )   No. CIV-24-235-R<br>) |
| **CITY OF WEATHERFORD,** *ex rel.*<br>**WEATHERFORD POLICE**<br>**DEPARTMENT,** *et al.*, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

# ORDER

Before the Court are Defendant City of Weatherford and Individual Defendants Hetherington, Lanier, Guyton, Owens, Beck, Murley, Blatnick, and Ard's Motions for Summary Judgment [Doc. Nos. 24, 25]. Plaintiff Derrick Duane Barker responded [Doc. Nos. 32, 33], and Defendants replied [Doc. Nos. 39, 40]. The matter is now at issue. For the following reasons, both Motions are GRANTED.

## BACKGROUND[1]

On the evening of November 27, 2021, Plaintiff was stopped by Defendant Hetherington.[2] Doc. No. 26-3 at 00:45-00:57. After coming to a stop, Plaintiff stepped out of his vehicle and walked toward Defendant Hetherington's police cruiser while pulling

---

[1] The incident was captured on two different dash cameras and three separate body cameras [Doc. Nos. 26-3, 26-5, 26-7, 26-8, 26-9]. The Court uses the footage to detail the factual background for the instant Motions.

[2] Defendant Ard was a civilian intern with the Weatherford Police Department on a ride-along with Defendant Hetherington at the time of the subject incident. Doc. No. 25 at pp. 1-2.

1

out his wallet. *Id*. at 00:58-01:06. Defendant Hetherington instructed Plaintiff to return to his vehicle. Doc. No. 26-5 at 00:15-00:17. Plaintiff did not immediately comply. *Id*. at 00:17-00:30. Defendant Hetherington called for backup. *Id*. at 00:34-00:38.

Plaintiff then stood by the driver's side of his vehicle. *Id*. at 00:43-00:49. He was told to sit in his vehicle, which he eventually did. *Id*. at 00:44-01:21. He was then informed that he was stopped because his license plate was not illuminated. *Id*. at 01:24-01:27. Plaintiff suddenly exited his vehicle so that he could go look at the license plate himself. *Id*. at 01:26-01:31. Defendant Hetherington placed his hand on Plaintiff's chest and repeatedly instructed Plaintiff to return to his vehicle. *Id*. at 01:28-01:37. Plaintiff did not comply. *Id*. at 01:28-01:41. Defendant Hetherington warned Plaintiff that if he did not return to his vehicle, he would be arrested for obstruction. *Id*. at 01:35-01:37. Plaintiff continued to not comply. *Id*. at 01:37-01:41.

Defendant Hetherington informed Plaintiff that he was under arrest and took Plaintiff's arm to handcuff him. *Id*. at 01:41-01:44. Plaintiff resisted and reentered his vehicle. *Id*. at 01:44-01:58. Defendant Hetherington drew his taser gun and trained it on Plaintiff, directed him to exit the vehicle, and repeatedly informed Plaintiff that he would be tased if he did not exit the vehicle. *Id*. at 01:54-02:31. Defendant Lanier then arrived. *Id*. at 02:23. Defendant Hetherington instructed Defendant Lanier to "cover him" with his taser gun. *Id*. at 02:28. Defendant Hetherington then attempted to extract Plaintiff from the vehicle. *Id*. at 02:35-02:59. Plaintiff resisted. *Id*. Plaintiff was warned multiple times that he would be tased if he did not exit his vehicle. *Id*. Plaintiff still did not comply. *Id*.

Defendant Hetherington then directed Defendant Lanier to deploy his taser, which he did. *Id*. at 02:59-03:01. Within seconds, more officers arrived. Doc. No. 26-3 at 03:47-03:54. Defendant Hetherington and Defendant Guyton were able to extract Plaintiff from the vehicle despite Plaintiff's resistance. *Id*. at 03:59-04:01. Defendant Owens struck Plaintiff with a baton in the shin twice to get Plaintiff to the ground. *Id*. at 04:01-04:03. Defendant Hetherington and Defendant Guyton rolled Plaintiff onto his stomach and attempted to place his hands behind his back. Doc. No. 26-7 at 01:38-01:39. Plaintiff resisted. *Id*. at 01:40-01:47. After a couple of seconds, Defendant Owens performed an x-bar maneuver on Plaintiff's shin to encourage him to place his hands behind his back. *Id*. at 01:42-01:51. The maneuver was successful, and Plaintiff was handcuffed. *Id*. at 01:51. Plaintiff was then evaluated by medics and released into police custody. *Id*. at 06:50-18:15.

Plaintiff sued both the individual officers involved in the arrest and the City of Weatherford under 42 U.S.C. § 1983 [Doc. No. 1-2 at p. 6]. Specifically, Plaintiff contends that Individual Defendants violated his Fourth Amendment rights by (1) using excessive force to effect the arrest and (2) failing to intervene to prevent the excessive force. *Id*. Plaintiff also claims that Defendant City's customs or policies enabled and caused the constitutional injury. *Id*. at pp. 6-7.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set

3

forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (alteration and quotation marks omitted). When there is a recording of an incident, the court must "view the facts in the light depicted by the video recording." *Valencia v. De Luca*, 612 F. App'x 512, 514 (10th Cir. 2015) (citation omitted) (cleaned up). Accordingly, the court "cannot adopt a party's version of the facts where there is clear contrary video evidence." *Id*. (citation and quotation marks omitted).

## DISCUSSION

### I.    Individual Defendants—Qualified Immunity

Individual Defendants have asserted the defense of qualified immunity. Plaintiff responds that Individual Defendants are not entitled to qualified immunity because it was clearly established that their use of excessive force against him and failure to intervene violated the Fourth Amendment.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome the assertion of qualified immunity, the plaintiff "must establish (1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct." *Dodds v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010) (citation and quotation marks omitted). "[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134-35 (10th Cir. 2016) (citations omitted).

4

A. Excessive Force

1. Constitutional Violation

Plaintiff contends that use of the taser gun, baton, and x-bar maneuver was objectively unreasonable under the circumstances of the traffic stop.

"When an 'excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment.'" *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). "Under well-settled Supreme Court precedent, a law-enforcement officer's 'right to make an arrest…necessarily carries with it the right to use some degree of physical coercion…to effect it.'" *Holmes*, 830 F.3d at 1151 (quoting *Graham*, 490 U.S. at 396). But "'the degree of physical coercion that law enforcement officers may use is not unlimited,' and must comport with the Fourth Amendment." *Id*. (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1125 (10th Cir. 2007) (brackets omitted).

The standard for an excessive force claim is "whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to underlying intent or motivation." *Id*. (citations, quotation marks, and brackets omitted). To make this determination, the Court considers "factors such as 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id*. (quoting *Graham*, 490 U.S. at 397).

Here, applying the *Graham* factors, a reasonable juror could not find that the amount of force used was unreasonable.

First, Individual Defendants concede that Plaintiff's offense was not severe, Doc. No. 25 at p. 14, and "'a minor offense—at most—supports the use of minimal force.'" *Helvie v. Jenkins*, 66 F.4th 1227, 1239 (10th Cir. 2023) (quoting *Davis v. Clifford*, 825 F.3d 1131, 1135 (10th Cir. 2016)) (brackets omitted). However, the crime of arrest—obstruction—presents a necessity for force unique from other minor offenses. The first factor therefore favors Plaintiff, albeit slightly.

Second, Individual Defendants correctly note that like the plaintiff in *Mecham v. Frazier*, 500 F.3d 1200 (10th Cir. 2007), Plaintiff was not cooperative, remained in the driver's seat during the stop, left the car on, and had a clear path of flight. *See Mecham*, 500 F.3d at 1205. Individual Defendants cite additional authority supporting their position that Plaintiff's defiance while behind the wheel of a running vehicle posed a threat to the officers and the public at large. *See Simpson v. Kansas*, 593 F. App'x 790, 797 (10th Cir. 2014); *Helvie*, 66 F.4th at 1233; *De Luca*, 612 F. App'x at 519. The Court finds these authorities persuasive, especially considering that the stop took place at night, and Defendant Hetherington considered Plaintiff's conduct from the outset of the stop unusual. Doc. No. 26-5 at 1:00-1:05. Given the context and circumstances of the stop and Plaintiff's demeanor throughout, the second factor favors Individual Defendants.

Finally, from the beginning of the stop, Plaintiff repeatedly resisted Defendant Hetherington's lawful orders. He continued to resist up until the moment he was handcuffed. Throughout the sequence, Plaintiff was warned that he would be tased if he

did not comply. At multiple points, Defendant Hetherington attempted to use lesser force to extract Plaintiff from the vehicle, but Plaintiff resisted. And even after being removed from the vehicle, Plaintiff continued to resist, resulting in Defendant Owens's use of the baton. Once on the ground, Plaintiff remained defiant, leading to Defendant Owens' performance of the x-bar maneuver. So Plaintiff did not only resist arrest, but he defied the instructions of the officers and remained physically intractable from the origin of the stop to its eventual conclusion. This factor therefore strongly weighs in Individual Defendants' favor.

Accordingly, upon consideration of the *Graham* factors, the Court concludes that a reasonable juror could not find Individual Defendants' use of force unreasonable under the circumstances.

### 2. Clearly Established

Even if the Court reached a different conclusion above, Plaintiff's claim against Individual Defendants would still fail to overcome qualified immunity because Individual Defendants did not violate a clearly established right.

Plaintiff contends that qualified immunity does not apply because it is clearly established that the use of force against "effectively subdued" individuals violates the Fourth Amendment. Individual Defendants respond that Plaintiff was not "effectively subdued" when force was used. The Court agrees.

"[A] law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." *Harman v. Pollock*, 586 F.3d 1254, 1261 (10th Cir.

7

2009) (citation and quotation marks omitted). "[T]he Supreme Court has 'repeatedly told courts…not to define clearly established law at a high level of generality.'" *Estate of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

Plaintiff frames the clearly established law as the bar on use of force against an "effectively subdued" individual. "*Dixon*[3], *Casey*[4], and *Weigel*[5] clearly establish that the Fourth Amendment prohibits the use of force without legitimate justification, as when a subject poses no threat or has been subdued." *McCoy v. Meyers*, 887 F.3d 1034, 1052 (10th Cir. 2018). "'[W]hether an individual has been subdued from the perspective of a reasonable officer depends on the officer having enough time to recognize that the individual no longer poses a threat and react to the changed circumstances.'" *Walker v. Anderson*, No. 23-CV-0008-CVE-JFJ, 2024 WL 3905733, *8 (N.D. Okla. Aug. 22, 2024) (quoting *McCoy*, 887 F.3d at 1048).

Plaintiff has identified *McCoy*, *Dixon*, *Casey*, and *Weigel* as on-point Tenth Circuit decisions that govern the instant issue. All are distinguishable from the instant facts. He contends that Defendant Owens' use of the baton and performance of the x-bar maneuver came after Plaintiff was subdued, and therefore violated the clearly established principle

---

[3] *Dixon v. Richer*, 922 F.2d 1456 (10th Cir. 1991).

[4] *Casey v. City of Fed. Heights*, 509 F.3d 1278 (10th Cir. 2007).

[5] *Weigel v. Broad*, 544 F.3d 1143 (10th Cir. 2008).

barring the use of force after a subject has been "effectively subdued." His argument misses the mark.

First, the body camera and dash camera footage show that Defendant Owens used the baton while Plaintiff was resisting two other officers' attempts to bring him to the ground so they could make the arrest. Doc. No. 26-7 at 1:33-01:35. Based on this footage, Plaintiff was not subdued and no clearly established constitutional violation is gleaned from Defendant Owens' baton strikes.

Second, Plaintiff was not "effectively subdued" when Defendant Owens performed the x-bar maneuver. In *Salway v. Norris*, No. 21-8055, 2023 WL 1155868 (10th Cir. Jan. 31, 2023) (unpublished), a plaintiff was handcuffed, placed on a gurney, and punched in the face. *Salway*, 2023 WL 1155868, at *1. There, the court held that the plaintiff was not "effectively subdued" because he was actively kicking and thrashing while handcuffed. *Id*. at *3. The Tenth Circuit distinguished those facts from those in *McCoy*, *Dixon*, and *Casey* because the plaintiffs in those cases had completely ceased resistance, while the plaintiff in *Salway* continued to kick and thrash. *Id*. Here, Plaintiff was actively resisting attempts to place his hands behind his back when Defendant Owens performed the x-bar maneuver on Plaintiff's shin. Doc. No. 26-7 at 01:40-01:47. This continued resistance distinguishes the instant case from the cases cited by Plaintiff.[6] The Court therefore finds that no clearly

---

[6] Though not addressed by the *Salway* Court, in *Weigel*, the officer continued to apply pressure to the plaintiff's upper back after his hands were cuffed, feet were bound, and legs were restrained. *Weigel*, 544 F.3d at 1152-53. Again, the instant facts are distinguishable.

established constitutional right was violated from Defendant Owens' performance of the x-bar maneuver.

Accordingly, Individual Defendants are entitled to qualified immunity and their Motion is granted as to this issue.

### B. Failure to Intervene

"Tenth Circuit precedent clearly establishe[s]…that a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983." *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996) (citations omitted). Here, because no reasonable juror could find that the force exerted against Plaintiff was excessive, Individual Defendants are entitled to summary judgment regarding Plaintiff's failure to intervene claim.

## II.     Defendant City—Municipal Liability

Defendant City is entitled to summary judgment regarding Plaintiff's municipal liability claims because no underlying constitutional violation for excessive force or failure to intervene was established above. *See Martin v. City of Okla. City*, 180 F.Supp.3d 978, 993 (W.D. Okla. 2016) ("It is well established, however, that 'even if it could be said that [the City's] policies…were unconstitutional, the City cannot be held liable where, as here, the officers did not commit a constitutional violation.'" (quoting *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1155-56 (10th Cir. 2001)).

## CONCLUSION

Accordingly, because no reasonable juror could find that Individual Defendants violated Plaintiff's constitutional rights, both Individual Defendants' Motion and Defendant City's Motion are GRANTED.[7]

IT IS SO ORDERED this 18th day of April, 2025.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[7] Before this Order disposes of the action, Individual Defendants' Motion to Strike [Doc. No. 22] and Plaintiff's Motion for Leave [Doc. No. 30] are denied as moot.